THE NEWAYGO COUNTY MANUFACTURING COMPANY (A
CORPORATION) v. WILDER D. STEVENS ET AL.

*Equity—Statutory foreclosure of mortgage—Injunction—Cross-bill
—Bankruptcy—Taxes.*

1. An assignee in bankruptcy, who claims as a part of the bank-
rupt estate lands conveyed by the bankrupt prior to the com-
mencement of the bankruptcy proceedings, does not occupy a
fiduciary relation to such grantee which makes it inequitable
for him to claim the land as belonging to the estate, or to pur-
chase tax-titles thereon granted on sales for delinquent taxes
assessed after such assignment, such claim not relieving the
grantee from the duty of paying said taxes.

2. It would be an extremely harsh and unfair way to deal with
the answer of defendants in a chancery suit, to single out
a single sentence, which is open to more than one construction,
and put that construction upon it which the context and whole
statements of the answer show was not the intent of the
pleader, and base relief upon that single sentence, unsupported
by proof, but contradicted by the whole theory and proofs on
behalf of said defendants.

3. A bill was filed by the alleged owner of certain land to enjoin
the foreclosure of a purchase-money mortgage executed to an
adverse claimant, and to annul the mortgage, on the ground
of the invalidity of such adverse claim of title. The answer
claimed affirmative relief by way of a foreclosure of the mort-
gage. On the hearing, on appeal, the adverse claim was found
to be well founded; and all of the proper parties being before
the court, and the amount due on the mortgage being admit-
ted, as also the amount expended in the enjoined foreclosure
proceedings, a decree of foreclosure is granted, and the com-
plainant is decreed to pay the amount expended in such fore-
closure proceedings.

Appeal from Newaygo.   (Palmer, J.)   Argued January
9, 1890.   Decided February 20, 1890.

Bill to enjoin a statutory foreclosure, to annul the
mortgage and certain tax deeds covering the mortgaged

premises, etc. Complainant appeals. Decree modified in accordance with the opinion, in which the facts are stated.

*E. L. Gray,* for complainant, contended:

1. The complainant was entitled to a decree removing the cloud upon the title caused by the conveyance from Avery to Stevens, and it was not compelled to litigate the assignee's title referred to in defendants' answer; citing *Gage v. Mayer,* 117 Ill. 632; which case settles the principle that a court of equity is not a proper tribunal for the trial of legal titles to real estate; nor can an action of ejectment be tried in a court of equity by bill or cross-bill; citing *Parker v. Shannon,* 114 Ill. 192.

*A. R. Rood,* for defendants, contended:

1. It has been frequently decided by this Court that one of the requisites necessary to entitle a complainant to any relief on a bill to remove cloud from title is that the complainant must have and prove an equitable or legal title in the premises in controversy; citing *Stockton v. Williams,* 1 Doug. 546; *Hatch v. Village of St. Joseph,* 68 Mich. 220.

2. The case of *Gage v. Mayer,* 117 Ill. 632, has no application, because the defendant in that case claimed in his answer and cross-bill an original title from other sources not set up in the complainant's bill, and it was held that defendant could not have affirmative relief.

CHAMPLIN, C. J. The bill of complaint in this case was filed to enjoin a sale of real estate then being advertised under a power of sale in a certain mortgage executed by defendants John Kritzer and Margarette Kritzer to Wilder D. Stevens, and to have the mortgage declared null and void; and also certain tax deeds covering the same land declared to be null and void; and compel the defendants to convey to the complainant, so as to remove all cloud upon complainant's title in fee-simple.

The bill states that the Newaygo County Manufacturing Company in May, 1883, purchased of John H. Simmons the S. W. ¼ of the N. W. ¼ of section 25, in

township 12 N., range 13 W., in Newaygo county, Mich., and is in actual possession. The bill then states the source and chain of title from the United States through William J. Wells, Alexander Blake, Abigail Crosby, Susan Blake, and John H. Simmons. It states that, in 1868, Alexander Blake was adjudicated a bankrupt, and Wilder D. Foster appointed assignee, to whom all of his estate was assigned; that in September, 1873, Foster died, and Noyes L. Avery was appointed his successor; and that Avery, as assignee of Blake, sold the premises, with other lands to Wilder D. Stevens, who was a nephew of Foster; that in March, 1880, Sidney H. Sherman, a book-keeper for the firm of Foster, Stevens & Co., of which Wilder D. Stevens was a member, obtained a tax deed of said land for the year 1872, and another deed for the delinquent taxes for the years 1873 to 1877, inclusive; and on April 15, 1881, sold and conveyed said premises by quitclaim deed to defendant Stevens.

The ninth clause of the bill is as follows:

"That neither the said Wilder D. Foster nor Noyes L. Avery, as assignees of said Alexander Blake, although claiming the lands aforesaid were part of the assets of said Blake, paid any taxes on the land aforesaid, but permitted the same to be sold to said Stevens, March 18, 1880, for delinquen taxes for the years aforesaid, and subsequently, on April 7, 1880, conveyed said land, with others, to said Stevens as aforesaid."

The bill then states that on October 24, 1881, defendants Kritzer executed a mortgage to Wilder D. Stevens, which was duly recorded, and was then being foreclosed, on which there is claimed to be due to Stevens $418.51. The bill then proceeds to the prayer, as follows:

"*Eleventh.* That your orator charges that the said Foster and Avery, failing to pay taxes on said lands, and the said Avery conveying the same to said Stevens, and claiming the land as belonging to said Alexander Blake, assignor

in bankruptcy, all of which said Stevens well knew, the said Stevens, as your orator charges on information and belief, contriving and deceiving the said Susan B. Blake into believing that she had no interest in said land, and, by obtaining the tax titles aforesaid, hoped to cut off all her right, title, and interest in the same.

" *Twelfth*. That your orator avers that the action of said assignee in bankruptcy, as above stated, and of the said Wilder D. Stevens, as above set forth, representing, as did said Avery, said Alexander Blake in a fiduciary capacity, were in fraud of the rights of the said Susan B. Blake and her grantee, your orator. Your orator, therefore, expressly charges that, at the date of the conveyance of said land by said Avery to the said Stevens, said land was the real estate of said Susan B. Blake in law and equity, and that the actings and doings of the said Stevens and his confederates are contrary to equity and good conscience, and tend to the manifest wrong and injury of your orator."

Susan B. Blake, the bill alleges, was the wife of Alexander Blake. The bill of complaint makes no case against the title of defendant Stevens, acquired through the tax deeds. The legality of these deeds is not attacked in any manner. The apparent title to the land in question, and all the title Susan B. Blake ever had, was acquired through a deed from Abigail Crosby, her mother, to whom Alexander Blake had conveyed them on March 16, 1855, recorded April 20, 1855. Abigail Crosby reconveyed them to Susan B. Blake on April 5, 1855, recorded November 24, 1866. The circumstances under which these conveyances were made will be noticed further on. If the statements in the bill of complaint are correct, neither Foster, Avery, Sherman, nor Stevens owed her any duty to pay the taxes upon her land. No matter how much they may have claimed that it belonged to the bankrupt's estate, it did not relieve her from the duty of paying her own taxes. The claim made was adverse to her interests, and in no sense did they occupy a fidu-

ciary relation to her which made it inequitable for them to claim the land as belonging to the bankrupt's estate, or to purchase tax titles thereon.

The facts disclosed by the proofs show that these with other lands belonged to Alexander Blake in 1855; that they were what is known as "pine lands," valuable chiefly for the timber growing thereon; that at that time Blake became embarrassed in his business; that he was in debt, and, in order to keep certain creditors from attaching this land, he voluntarily conveyed it to his mother-in-law, Abigail Crosby, who was a member of his family. He claims that he owed her, but he does not say how much, nor that the indebtedness was canceled. Nothing, in fact, was paid by Mrs. Crosby. She held the legal title a few weeks, and then conveyed to Mrs. Blake without consideration. This deed was not recorded until 1866. In the mean time, and after Mrs. Crosby had conveyed to Mrs. Blake, namely, on November 24, 1856, Blake obtained from her a power of attorney, giving him full control over the lands conveyed to her, to take possession thereof, and sell the timber therefrom, or to cut and remove it himself, or to sell said land. He was cutting timber upon the land at the time he conveyed to Mrs. Crosby, to prevent its being attached by his creditors, and he continued cutting and removing the timber, so that at the time he was adjudicated a bankrupt these lands were what are classed as "stump lands," and the whole value did not exceed 75 cents an acre, which fact may account for Mrs. Blake's not paying the taxes, if she really claimed title thereto.

After Stevens had acquired his claims by deeds from Sherman and Avery, he sold 80 acres to defendant Kritzer on October 19, 1881, and took back a mortgage to secure payment of part of the purchase money. This is the mortgage complainant asks to have canceled. Later,

and in the year 1882, "stump lands" having obtained
some value, John H. Simmons made an offer to Alexan-
der Blake to the effect that, if he would convey to him
certain stump lands, he would give him one-half of the
proceeds which he should receive on sale.  In looking up
such lands, he fell upon the 80 acres which Stevens had
sold to Kritzer.  He sent a quitclaim deed from New-
aygo to George R. Perry, a son-in-law of Mrs. Blake,
residing at Grand Rapids, and requested him to procure
the deed to be executed by Mrs. Blake, which he did,
and forwarded it to Simmons.  The consideration expressed
in the deed is one dollar, but Mrs. Blake testifies that
she received nothing, and did not know that she was
signing that deed; that it was with other papers; that
Simmons has never paid her anything for the deed.
There is testimony tending to show that Simmons was at
the time a member and an officer of the Newaygo County
Manufacturing Company.  However, on May 11, 1883, he
conveyed the 80 acres to that company.

There is no allegation in the bill of complaint that the
Newaygo County Manufacturing Company is a corpora-
tion organized under the laws of this State; neither is
there any proof of that fact; and it does not appear by
what right it purchases and holds real estate.  In the
testimony it is alluded to as a corporation, but there is
no proof of the fact.  I shall not, however, base my
opinion upon this lack of allegation or proof.

It appears that soon after the deed from Simmons the
complainant entered upon the west 40 tract of the 80,
and opened up a brick-yard thereon, and commenced to
make brick.  It appears also that its claims were not
acquiesced in either by Mr. Stevens or Mr. Kritzer; that
Simmons offered to sell his interest to Stevens for $100,
and he refused, saying his interest was not worth a cent.
It appears, also, that a compromise was agreed upon

between the Newaygo County Manufacturing Company and Kritzer, by which it was agreed that, if Kritzer would give the company a quitclaim deed of the west 40, it would quitclaim to him the east 40, and take care of the mortgage to Stevens. Kritzer and wife testify that the company agreed to pay it, but the president of the company, who represented it, says that they did not agree to pay it, but to take care of it. The record of the company was introduced from which it appears that the company had—

"Agreed to protect said Kritzer from said mortgage, either by payment of the same, or in such other manner as may be decided upon by said company."

Kritzer deeded in accordance with what he understood the agreement to be. The company has not yet done so, although its record states that it has done so

The defendants defend upon two theories:

"1. That the conveyance by Blake to his mother-in-law, and the subsequent conveyance to Mrs. Blake, his wife, was in fraud of his creditors, and that she held the legal title in trust for his creditors.

"2. That, if otherwise, the tax deeds are valid, and conveyed the legal title, which has become vested in Kritzer by the deed from Stevens, and the mortgage is a valid lien upon the premises."

As to the first theory, while I have no doubt but that the creditors then existing of Alexander Blake could have successfully attacked the conveyance to his mother-in-law for fraud, there is not sufficient *data* in the proofs before us to show that the assignee in bankruptcy could set it aside.

Upon the second theory, the proof is clear and undisputed. There is nothing to show any illegality in the tax titles, or in the manner they were procured, to affect their validity as a complete defense to complainant's bill. The source and manner in which complainant's title was

obtained does not entitle it to favorable consideration, much less does its treatment of defendant Kritzer since. I am satisfied that the main consideration for the deed from Kritzer to the company was that the company should pay the Stevens mortgage, and thus relieve Kritzer from obligation to pay it, and also his 40 from the lien thereof. Notwithstanding all these facts, it is gravely claimed by the solicitor for the complainant that the defendants are concluded, and all their rights and equities cut off, by the following clause in their answer to the eleventh paragraph of the bill above set forth in full.    The ninth paragraph of the answer reads as follows:

"And these defendants deny the eleventh statement of complainant in its bill of complaint, upon information and belief, that either Wilder D. Foster or Noyes L. Avery in not paying taxes on said land, and in Noyes L. Avery conveying the same to Wilder D. Stevens, and in claiming the same belonged to Alexander Blake, assignor in bankruptcy, as these defendants answer upon information and belief, did not contrive and deceive Susan B. Blake that she had no interest in said land, and in obtaining tax titles to said land did not intend to cut her off in any interest which she had in said land."

I think the learned counsel for the complainant misconstrues the language and meaning of this paragraph of the answer. The defendants start out by plainly and unequivocally denying the eleventh statement of complainant's bill, and then attempt to recite the statement. The fair construction is that they say in answer that they did not contrive nor deceive said Susan to think or believe that she had no interest in said land, and deny that they did not intend to cut off, by obtaining such tax titles, any interest she may have had in the land. That the defendants did not intend to assert or admit that in obtaining the tax titles to said land they did not intend to cut off any interest Mrs. Blake may have had is apparent when we consider the other clauses of the

answer, in which they assert that they derived their title to the lands by virtue of the Auditor General's deeds for taxes, stating the years named in the bill; and that they and their grantors have had open, notorious, and continued possession of the land; and also that Kritzer is the owner thereof through the deed from Stevens; and in their denials of all title and rights, either at law or in equity, of Susan B. Blake to the land. It would be an extremely harsh and unfair way to deal with the answer of defendants to single out a single sentence, which is open to more than one construction, and put that construction upon it which the context and whole statements of the answer show was not the intent of the pleader, and base relief upon that single sentence, unsupported by proof, but contradicted by the whole theory and proofs on behalf of defendants in the case.

The answer claims the benefit of a cross-bill. The defendant Stevens was enjoined from proceeding with his foreclosure at law. The execution of the mortgage is admitted. The amount due thereon is also admitted. The proper parties are before the court. The amount expended in the foreclosure proceedings which the injunction arrested appears to have been $30.01. There is nothing in the way to afford relief to defendant Stevens under his cross-bill.

The prayer of the bill of complaint must be denied, and a decree of foreclosure in the usual form will be drawn, and entered here, requiring the Newaygo County Manufacturing Company, John Kritzer, Margarette Kritzer, or some of them, to pay Stevens the amount of $366, and interest at 7 per cent. from October 27, 1881, within 90 days from the entry of this decree, and that the Newaygo County Manufacturing Company pay to defendant Wilder D. Stevens the sum of $30.01, and interest from March 8, 1889, at 6 per cent.; and that complainant pay to defend-

ants the costs of both courts, to be taxed; and that the transcript be remanded for further proceedings under the decree. The decree, and the proceedings under it, are to be without prejudice to the right of said Stevens to proceed to a foreclosure as to the other 40 acres covered by his mortgage, in case a sale of the premises in question does not realize enough to satisfy said mortgage and interest.

MORSE, LONG, and GRANT, JJ., concurred with CHAMPLIN, C. J.

CAMPBELL, J., *(dissenting.)* Complainant filed its bill against defendants to remove alleged clouds on its title. Defendants answered, asking cross-relief. The bill was dismissed without prejudice, but complainant was further, beyond costs, decreed to pay to defendant Stevens the expenses of a statutory foreclosure which had been stayed pending the suit. Complainant appeals.

The case made by the bill was briefly this: Complainant holds through mesne conveyance a title which was derived from Alexander Blake by warranty deed to Abigail Crosby in March, 1855, and from Abigail Crosby by warranty deed to Susan B. Blake in April, 1855. Susan B. Blake was wife of Alexander. This title is regular and perfect. In 1868, Alexander Blake became bankrupt. Defendant Stevens on May 29, 1878, obtained a conveyance from an assignee in bankruptcy, which we assume was sufficient to convey Alexander Blake's title, whatever it may have been, to various lands included in it. It purported to cover the land in suit. On April 15, 1881, Stevens became grantee of certain tax titles, which seem to have been purchased originally on his behalf. The bill does not aver that these were irregular, but claims he could not set them up adversely. Kritzer is a grantee of Stevens of the particular lot in question, as part of a

larger purchase, for all of which he gave back a mortgage to Stevens, which was about being foreclosed when the bill was filed. An amicable release was obtained of Kritzer, and complainant had agreed with him to successfully assail the mortgage on these premises, but had not recognized it as valid. Defendants denied that Susan B. Blake was owner of the land, and claimed that the Crosby title was a mere trust for Blake's benefit. They set up a claim under the tax titles, and aver that the failure to keep the taxes paid, and the procurement of the tax titles, were not meant to be in fraud of Susan Blake, but deny her interest, and say—

" That, in obtaining the tax titles to said land, they did not intend to cut her off in any interest which she had in said land."

Under these circumstances, we think the relief prayed should have been granted. Susan Blake's title is beyond controversy. Blake had nothing to convey to his assignee in bankruptcy, and the assertion of title by him and his grantees against his own warranty deed was a sufficient ground for relief in equity; and we think the practical disclaimer in the answer of any purpose to injuriously affect Susan Blake's title exonerated complainant from going into proofs to invalidate them. The case, therefore, becomes a very simple one, and the complainant was entitled to a decree setting aside, as against its rights, the transactions complained of.

A decree should therefore be made setting aside the bankrupt and tax deeds and mortgage, and ordering a release, and that the decree stand operative for that purpose till release is made effectually; costs of both courts to go against Stevens.